IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:19cr362 |
| | ) | |
| v. | ) | Count 1: 18 U.S.C. § 1349 |
| | ) | (Conspiracy to Commit Wire Fraud) |
| BRIAN M. CARPENTER, | ) | |
| Defendant. | ) | Counts 2 – 5: 18 U.S.C. §§ 1343 and 2 |
| | ) | (Wire Fraud) |
| | ) | |
| | ) | Forfeiture Notice |

**Indictment**

December 2019 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

**GENERAL ALLEGATIONS**

At all times relevant to this Indictment, unless otherwise stated:

1. The defendant, BRIAN M. CARPENTER ("CARPENTER"), was the owner and operator of The Flintstone Group LLC ("Flintstone"), which, among other things, facilitated the sale and distribution of janitorial products. Flintstone was created on or about July 29, 2011. Its business address was located in Leesburg, Virginia, within the Eastern District of Virginia.

2. On or about February 28, 2012, CARPENTER opened a business checking and payroll account for Flintstone at BB&T, account ending in 9838. The address associated with the payroll account was in Ashburn, Virginia, within the Eastern District of Virginia.

3. Company #1 was co-owned and operated by A.I. CARPENTER purchased janitorial products for clients of Flintstone through Company #1. In addition to Company #1,

1

A.I. was the sole owner of Company #2, a computer and information technology business, and Company #3, a storage business. A.I. distributed janitorial supplies for Company #1 from a business address in Sterling, Virginia, within the Eastern District of Virginia.

4. The Washington Metropolitan Transit Authority ("WMATA") was an interstate transportation agency which operated transit services in the Washington, D.C. metropolitan area.

5. K.S. was employed by WMATA for approximately 26 years. From in or around 2013, until on or about June 5, 2015, K.S. was an Assistant Superintendent of Grounds Maintenance and Custodial Services ("GMAC") for WMATA. K.S was primarily responsible for overseeing janitorial services on WMATA's transit line known as the Red Line. K.S.'s office was located at the Metro Center WMATA station in Washington, D.C.

6. K.S. maintained a checking account with Capital One, account ending in 5950.

7. D.B. was employed by WMATA for approximately 27 years. From in or around 2012, until on or about June 5, 2015, D.B. was a GMAC Assistant Superintendent. D.B. was primarily responsible for overseeing janitorial services on WMATA's Orange, Blue, and Silver transit lines. D.B.'s office was located in Falls Church, Virginia, within the Eastern District of Virginia.

8. D.B. maintained a joint checking account with D.B.'s spouse at Senate Federal Credit Union, account ending in 0375. D.B. also maintained a checking account with the Transit Employees Federal Credit Union, account ending 8834.

9. As Assistant Superintendents, K.S. and D.B. were provided WMATA Citibank credit cards ("purchase cards") to buy items such as janitorial products for the metro stations they supervised. D.B.'s purchase card number ended in 1771. K.S.'s purchase card number ended in 1342.

10. B.F. was employed by WMATA for approximately 26 years and was the Manager of Special Projects for GMAC. B.F. also had a WMATA-issued purchase card.

11. WMATA maintained policies and procedures for employee credit card purchases which mandated that single purchases on K.S.'s and D.B.'s credit cards could not exceed $3,000.

12. S.G., C.W., M.E.O., P.M., A.P., and others, through various businesses, (collectively, "credit card processors") processed credit card transactions on behalf of CARPENTER using purchase card numbers issued to K.S. and D.B.

13. Products K.S., D.B., and B.F. purportedly ordered from CARPENTER included, among others, a chemical enzyme solvent called "Blitz," stainless steel wipes, Dawn II floor cleaner, microfiber cloths, urinal and toilet floor mats, and a degreaser citrus solvent called "DG-28."

14. "Blitz" and "DG-28" were products that were specifically labeled by Manufacturer #1 for CARPENTER and A.I.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

15. The allegations contained in paragraphs 1 through 14 of this Indictment are realleged as if fully set forth herein.

16. From at least in or around January 5, 2013, and continuing through at least March 12, 2015, in the Eastern District of Virginia and elsewhere,

**BRIAN M. CARPENTER,**

K.S., D.B., B.F., and others known and unknown to the grand jury, did knowingly conspire and agree with each other to commit the following offense, namely wire fraud – that is, having knowingly devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, to transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

*The Purpose of the Conspiracy*

17. The purpose of the conspiracy was for CARPENTER and his co-conspirators to defraud WMATA primarily through the use of K.S.'s and D.B.'s WMATA-issued credit cards to order janitorial supplies for metro stations from CARPENTER that, in many instances, would never be delivered. Instead, on these occasions, CARPENTER would keep a portion of the proceeds from the charges to the WMATA purchase cards and then make personal cash payments to K.S and D.B. in exchange for their agreement to permit CARPENTER to charge products on their purchase cards that were never delivered. CARPENTER spent the money he fraudulently obtained, at least in part, for his own personal use and benefit.

*The Manner and Means of the Conspiracy*

The manner and means by which CARPENTER and his co-conspirators carried out the conspiracy, included, but were not limited to, the following:

18. K.S. and D.B. provided CARPENTER with their purchase card numbers so that they need not be present when the purchase cards were charged for purported orders of products.

19. In order to circumvent WMATA's purchase card requirements, CARPENTER enlisted various individuals to serve as credit card processors to process credit card transactions on CARPENTER's behalf. For example:

   a. On or about February 14, 2014, P.M. began processing credit card payments through Foursquare on CARPENTER's behalf using K.S.'s and D.B's purchase card numbers.

   b. On or about February 24, 2014, within the Eastern District of Virginia, S.G. opened a Bank of America merchant processing account in the name of Company #4 for the purpose of processing credit card payments on CARPENTER's behalf. S.G. began processing transactions for CARPENTER using K.S.'s and D.B.'s purchase card numbers on or about March 4, 2014.

   c. On or about February 26, 2014, within the Eastern District of Virginia, C.W. opened a Bank of America merchant processing account in the name of Company #5 for the purpose of processing credit card payments on CARPENTER's behalf. C.W. began processing transactions for CARPENTER using K.S.'s and D.B.'s purchase card numbers on or about March 4, 2014.

   d. On or about April 14, 2014, A.P. began processing transactions for CARPENTER through PayPal using K.S.'s and D.B.'s purchase card numbers.

    e. On or about July 29, 2014, M.E.O. began processing transactions for CARPENTER through PayPal using D.B.'s purchase card number.

20.    To effectuate the bogus credit card transactions, CARPENTER sent fake and fraudulent invoices to credit card processors to charge supply purchases to the WMATA employees' purchase cards for supplies WMATA never received.

21.    The credit card processors subsequently provided payments, to include checks, to CARPENTER for the amount CARPENTER was owed based upon the invoices, minus the processor's commissions and/or fees.

22.    Individuals who acted solely as credit card processors never ordered any products on behalf of WMATA, nor did they deliver any products to WMATA referenced in the invoices.

23.    After receiving the fraudulent invoices, K.S., D.B., and others falsely certified with WMATA that all products that were ordered were delivered as outlined in the invoices when, in truth and in fact, all products ordered were not delivered as K.S. and D.B. well knew.

24.    Once K.S. and D.B. falsely certified the fraudulent credit card purchases, individuals such as B.F. approved the certifications.

25.    After these fake and fraudulent orders were placed and paid, CARPENTER met K.S. and others at various locations in the Washington, D.C. metropolitan area and provided cash and the fraudulent invoices for the purported supply purchases. For example:

    a. On or about September 29, 2014, CARPENTER sent an email to C.W who subsequently forwarded the email to S.G. containing a sales order for K.S.'s card for 23 cases of stainless steel cleaner towels. That same day, K.S.'s purchase card was charged $2,954.12.

    b. On or about September 30, 2014, CARPENTER deposited four checks into his

bank account totaling $20,278.72, which included the amount he received from S.G. for September 29, 2014, charge to K.S.'s card.

c. On or about October 2, 2014, K.S. deposited $1,700 cash into his Capital One Bank account ending in 5950, in Burke, Virginia, within the Eastern District of Virginia, knowing that a portion of this payment was in exchange for K.S. permitting CARPENTER to charge his credit card for 23 cases of stainless steel cleaner towels WMATA never received.

26. In or around December 2014, WMATA's Office of Inspector General began investigating whether the janitorial products ordered and paid for using K.S.'s, D.B.'s, and B.F.'s purchase cards were, in fact, being delivered. As a result, in or around January 2015, in an effort to conceal their fraudulent scheme, CARPENTER, K.S., D.B., and others arranged a large delivery of products to WMATA metro stations to make it appear as if WMATA had received all of the products charged to the purchase cards.

27. In or around late January 2015, WMATA employees were instructed to state falsely that the products that were delivered in January 2015 had been on hand for several months, to include DG-28 and Blitz. Employees were further instructed to take photographs of the products in their supply cabinets.

28. On or about March 12, 2015, in Leesburg, Virginia, within the Eastern District of Virginia, CARPENTER caused fraudulent documentation to be submitted to WMATA falsely claiming that many of the products ordered by K.S. and D.B. during September and October 2014 had been substituted for other products. In addition, that same day, CARPENTER provided WMATA with doctored invoices reflecting the sale of these substituted products.

(All in violation of Title 18, United States Code, Section 1349).

## COUNTS TWO THROUGH FIVE
### (Wire Fraud)

The Grand Jury further charges that:

29. The allegations contained in paragraphs 1 through 28 are incorporated here by reference.

30. On or about the dates below, in the Eastern District of Virginia and elsewhere, defendant CARPENTER, having knowingly devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, as set forth below, each such wire transmission being a separate count:

| Count | Date | Wire Communication |
|---|---|---|
| 2 | September 29, 2014 | Electronic communication to initiate a $2,954.12 charge to K.S.'s purchase card from a location within the Eastern District of Virginia to computers hosting First Data's servers outside the Commonwealth of Virginia. |
| 3 | September 29, 2014 | Electronic communication to initiate a $2,992.50 charge to K.S.'s purchase card from a location within the Eastern District of Virginia to computers hosting First Data's servers outside the Commonwealth of Virginia. |
| 4 | October 28, 2014 | Electronic communication to initiate a $2,992.50 charge to K.S.'s purchase card from a location within the Eastern District of Virginia to computers hosting First Data's servers outside the Commonwealth of Virginia. |
| 5 | November 28, 2014 | Electronic communication to initiate a $2,992.50 charge to K.S.'s purchase card from a location within the Eastern District of Virginia to computers hosting First Data's servers outside the Commonwealth of Virginia. |

(All in violation of Title 18, United States Code, Sections 1343 and 2).

## Forfeiture Notice

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE FOR FORFEITURE AS DESCRIBED BELOW:

Pursuant to Federal Rule of Criminal Procedure 32.2(a), defendant BRIAN M. CARPENTER is hereby notified that, if convicted of the conspiracy and wire fraud offenses alleged in Counts One through Five above, he shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the following property:

(a) A sum of money not less than $263,576.41 in U.S. currency, representing the amount of proceeds obtained as a result of the violation of Title 18, United States Code, Section 1343, as described in Counts One through Five;

(b) Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant BRIAN M. CARPENTER shall forfeit substitute property, up to the value of the amount described in subparagraph (a), if, by any act or omission of defendant BRIAN M. CARPENTER, the property described in paragraph (a), or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been comingled with other property which cannot be divided without difficulty.

(All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and
Title 28, United States Code Section 2461(c).)

A True Bill

*Pursuant to the E-Government Act, The original of this page has been filed under seal in the Clerk's Office*

_____
Date

_____
Foreperson

G. Zachary Terwilliger
United States Attorney

By: _____
Jamar K. Walker
Assistant United States Attorney