IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 1:19CR362 |
| v. | ) | |
| | ) | The Honorable Liam O'Grady |
| BRIAN M. CARPENTER, | ) | |
| | ) | Hearing Date: November 19, 2021 |
| Defendant. | ) | |

**United States' Position on
Defendant's Probation Violations**

"It's a significant departure from the guidelines, and don't make me regret it."[1]

"Make me proud of the person that you go forward from today being. You have all the tools to be a tremendous service to the community. . . . [I]f you do that and your heart is right and your spirit is right, then your future is very bright. And I very much hope you do great things in the years to come."[2]

These are the words this Court spoke to Brian Carpenter on the day he was sentenced for a fraud scheme that caused losses to the victim of over $300,000. "Don't make me regret it." It is clear that this Court realized, just like the defendant *should* have realized, that he had been afforded a golden opportunity—an opportunity to be of service to the community. And perhaps, even more importantly to Mr. Carpenter personally, an opportunity to avoid spending a single day in jail for his crime—a crime that came with an advisory Sentencing Guidelines range of 46 to 57 months. Instead, on December 15, 2020, Mr. Carpenter received a sentence of two years' probation to include six months of home confinement.

---

[1] ECF. No. 48 at 36:4-5.

[2] *Id.* at 36:7-19.

But rather than seizing the opportunity the Court so graciously afforded him, the defendant, less than six months after receiving a second chance, consciously chose to get behind the wheel of a motor vehicle after, by his own account, drinking Vodka and taking sleeping pills. Instead of serving the community as the Court encouraged him to do, the defendant put his life and the lives of others in grave danger by driving in a severely impaired state. Indeed, it appears that the defendant was so impaired on May 13, 2021, that he had a traffic accident that caused serious damage to the front end of his vehicle and nevertheless continued driving thereafter. To this day, it is unclear what the defendant hit with his vehicle because the defendant reportedly became unconscious while driving and does not recall how the traffic accident occurred. Given how impaired the defendant was while driving, it is incredibly fortunate that no one was injured or killed as a result of the defendant's decision to drive that night.

Accordingly, pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3565, the United States recommends that this Court find the defendant in violation of his probation, revoke the defendant's probation, and sentence the defendant to 12 months of incarceration followed by two years of supervised release.

## BACKGROUND

### I.  Defendant's Underlying Offense

On July 10, 2020, the defendant pleaded guilty to Count One of the Indictment, charging him with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349. ECF No. 27. As previously stated, on December 15, 2020, the Court sentenced the defendant to two years of probation to include a special condition of six months home confinement with electronic monitoring. ECF. No. 39. Critically, the defendant had been given permission to work outside of his home from 8am to 8pm.

The defendant's term of location monitoring began on December 30, 2020.

## II.   Current Alleged Violations

The Petition alleges that the defendant violated two conditions of probation. First, the petition asserts that the defendant violated a mandatory condition of probation by committing a state crime. More specifically, in the early morning hours of May 13, 2021, the defendant was arrested by the Virginia State Police in Fairfax County, Virginia, and charged with Driving Under the Influence and Refusal of Blood Test. According to the petition, the defendant was found in the driver's seat of his vehicle, which was blocking the left lane of I-66 westbound. The front-end of the defendant's 2020 Mercedes Benz GLS had substantial damage. *See* Gov't Exh.'s 1A–1B. At the scene, the defendant was observed to have slurred speech and bloodshot eyes, and his shirt was inside out. Notably, the defendant admitted to law enforcement that he had consumed Grey Goose Vodka and had taken sleeping pills. Though he originally consented to a blood draw, the defendant ultimately refused. His blood was ultimately taken pursuant to a search warrant, resulting in a BAC level of 0.149%—nearly twice the legal limit. *See* Government Exh.'s 4–5. The defendant further provided the United States Probation Office with a written statement in which he admitted to drinking alcohol, taking sleeping pills, and driving.

Further, the petition alleges that the defendant violated his term of home confinement as the aforementioned offense conduct occurred at 2:00am—six hours after the defendant's 8:00pm curfew.

The defendant contests these violations.

## ANALYSIS

### I. Legal Standard

Federal Rule of Evidence 1101(d)(3) excludes probation revocation hearings from proceedings strictly governed by the Federal Rules of Evidence. Fed. R. Evid. 1101(d)(3); *United States v. Jones*, 143 F. App'x 521, 523 (4th Cir. 2005) (per curiam). Thus, in cases where hearsay testimony is elicited, "the inquiry focuses on whether the evidence was sufficiently reliable." *See Jones*, 143 F. App'x at 523; *see also United States v. Doswell*, 670 F.3d 526, 531 (4th Cir. 2012) (holding "prior to admitting hearsay evidence in a revocation hearing, the district court must balance the releasee's interest in confronting an adverse witness against any proffered good cause for denying such confrontation.").

A judge's order revoking probation does not require the level of proof necessary to support a criminal conviction. *United States v. Ball,* 358 F.2d 367, 370 (4th Cir.1966). Rather, the district court need only find a violation of a probation term by a preponderance of the evidence. *United States v. Bujak,* 347 F.3d 607, 609 (6th Cir. 2003); *see also* 18 U.S.C. § 3583(e)(3) (2012) (supervised release standard); *United States v. Copley,* 978 F.2d 829, 831 n. * (4th Cir. 1992) ("Supervised release and probation differ only in that the former follows a prison term and the latter is in lieu of a prison term.").

"Under current law, if a defendant violates the conditions of probation, the court may continue probation or revoke it and 'resentence the defendant under subchapter A.'" *United States v. Vinson*, 232 F.3d 892, 2000 WL 1458766, (4th Cir. Oct. 2, 2000) (quoting 18 U.S.C. § 3565(a)(2)). "[T]he amended provision plainly permits a district court to begin the sentencing process anew and to impose any sentence appropriate under the provisions of subchapter A, i.e., one that satisfies statutory and guideline requirements." *United States v. Schaefer*, 120 F.3d. 505, 507 (4th Cir. 1997). In other words, the defendant can be sentenced as if this were his first

time appearing before the Court for defrauding WMATA.

Before revoking or modifying a term of probation, courts must consider the § 3553(a) sentencing factors—except for the factors under § 3553(a)(2)(A) or the kinds of sentences available under § 3553(a)(3). *See* 18 U.S.C. § 3583(e). Thus, the factors a court considers include the history and characteristics of the defendant; the nature and circumstances of the offense; and the need for the sentence to provide adequate deterrence to criminal conduct, to protect the public from the defendant's future criminal conduct, and to provide the defendant with correctional treatment, among other factors. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7).

## II.   Statutory and Guidelines Analysis

### A. *Maximum Term of Imprisonment Upon Revocation*

If the Court determines by a preponderance of the evidence that the defendant violated the terms of his probation, it may "(1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or (2) revoke the sentence of probation and resentence the defendant under subchapter A." 18 U.S.C. § 3565(a). At the time of his sentencing, the defendant's underlying offense of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, carried a maximum penalty of twenty years' imprisonment. Accordingly, if the defendant's probation is revoked, the Court may impose a statutory maximum term of twenty years' imprisonment followed by a three-year term of supervised release.

### B. *Sentencing Guidelines Calculation & Policy Statement*

The Sentencing Commission provided non-binding policy statements regarding the appropriate sanction for probation release violations. U.S.S.G. § 7A1; *United States v. Davis*, 53 F.3d 638, 640 (4th Cir. 1995). Under the relevant policy statement, there are three grades of violations. Where there is more than one violation of the conditions of release alleged, the grade

of the violation is determined by the violation having the most serious grade. U.S.S.G. § 7B1.1(b). Here, both violations alleged in the Petition are Grade C violations.

Pursuant to Section 18.2-270 of the Virginia Code, any person violating Section 18.2-266 for driving under the influence shall be guilty of a Class 1 misdemeanor. Grade C violations consists of "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." U.S.S.G. § 7B1.1(a)(3). The Sentencing Commission's policy statements provide a suggested range of terms of imprisonment upon revocation of probation in U.S.S.G. § 7B1.4. *See* U.S.S.G. § 7B1.3(b). At the sentencing hearing in this case, the Court adopted the Presentence Investigation Report's ("PSR") Guidelines' range calculation, ECF No. 33, which was based on a total offense level of 22 and a criminal history category of II. For someone with a criminal history category II, the suggested term of imprisonment for a Grade C violation is four to ten months imprisonment. *See* U.S.S.G. § 7B1.4.

## RECOMMENDATION

### I. The Defendant plainly violated the conditions outlined in the petition on probation.

For the reasons outlined below, the United States respectfully asks that the Court find the defendant in violation of the terms of probation. At the hearing, the government intends to introduce evidence of the harrowing facts surrounding the defendant's egregious conduct, primarily through the testimony of Trooper Collin Kashmer and Probation Officer Jeffrey Smihal.

This is truly a case where pictures (and video) are worth a thousand words. The Court will not need to take the government's word for any of the assertions as it will be able to see Mr. Carpenter's actions that night for itself. In addition to Trooper Kashmer's testimony, the

government will introduce photographs and dash camera footage of Trooper Kashmer's encounter with the defendant. *See* Gov't Exh.'s. 1A–1C, and 2. Among other things, the defendant's speech was slurred; he appeared disoriented, failed field sobriety tests, and possessed an utter inability to stand upright without swaying or stumbling. The photographs of the defendant's vehicle tell the story of the defendant who ran his vehicle into something that night, causing severe damage to his vehicle, and then apparently continued driving following the accident until at some point, by his own admission, he became unconscious. Because of the defendant's impaired state, we are left to wonder about the events leading up to the defendant's immobilized vehicle blocking an entire lane of traffic on a busy interstate.

Ultimately, the defendant's blood alcohol content was measured at .149%. *See* Gov't Exh. 5. Critically, because of the defendant's original consent and ultimate refusal, his blood alcohol content was not measured until nearly three hours after he originally encountered Trooper Kashmer.

Further, it is the government's understanding that the defendant intends to contest some portion of the evidence associated with the defendant's blood alcohol content analysis. However, to find the defendant in violation of the mandatory condition of violating state law, this Court need not find that the defendant's blood alcohol was over the legal limit of .08. Pursuant to Section 18.2-266 of the Virginia Code:

> It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article, (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, or (v) while such person has a blood

7

> concentration of any of the following substances at a level that is equal to or greater than: (a) 0.02 milligrams of cocaine per liter of blood, (b) 0.1 milligrams of methamphetamine per liter of blood, (c) 0.01 milligrams of phencyclidine per liter of blood, or (d) 0.1 milligrams of 3,4-methylenedioxymethamphetamine per liter of blood. **A charge alleging a violation of this section shall support a conviction under clauses (i), (ii), (iii), (iv), or (v).**

(emphasis added). The evidence before the Court will be more than sufficient to find a violation of subsections (ii), (iii), or (iv).

In addition to Trooper Kashmer's testimony, Probation Officer Smihal will testify that the defendant provided him a written statement in which the defendant acknowledged that "as a consequence of [his] consumption of alcohol and sleeping pills [he] became unconscious." *See* Gov't Exh. 8. The defendant also stated that "[t]his occurred while [he] was driving attempting to return to [his] home in order to comply with the restrictions of the approved time out." *Id.* The defendant was acutely aware that he violated his approved time out. Thus, it is abundantly clear that the defendant violated the terms of his probation.

## II. This Court should impose a significant term of imprisonment for the defendant's violation.

Given the defendant's conduct, the United States recommends that the Court impose a significant term of imprisonment. When the defendant originally appeared before this Court on the fraud offense, he attempted to blame others (namely, his co-conspirators) for his conduct. This time, the defendant has no one to blame but himself. Nevertheless, the defendant still appears to offer excuses for his actions as his statement to Mr. Smihal sets the groundwork for what he intends to offer this Court.

While there is no excuse for driving under the influence, the defendant's conduct might be more understandable if this were the first time he had appeared before a court for operating a vehicle while under the influence of alcohol. But, having reviewed the defendant's Presentence

8

Investigation Report, this Court is well aware that the defendant has previously been convicted for Driving While Intoxicated in Loudoun County, Virginia.[3] That experience should have crystallized the very real danger that driving under the influence of alcohol poses. The defendant chose to do so anyway.

    At the outset of this position paper, the United States noted that the defendant took for granted the opportunity that this Court afforded him. But it was not just the Court's generosity that the defendant abused, but also the Government's, because despite the significant period of incarceration the defendant faced for orchestrating a fraud in which the defendant lined his owned pockets at the expense of a government agency, the United States also agreed to recommend a sentence of no more than six months. The United States held up its end of the bargain, but by disrespecting the sentence the Court imposed and the United States' willingness to recommend a sentence substantially below the Guidelines range, the defendant failed to hold up his end.

    At the end of the day, we are all fortunate that this Court has an opportunity to have Mr. Carpenter come before it again, because as tragic as the events of May 13, 2021 were, they could have been far worse. A stern message must be sent. The defendant's excuses should not be allowed to carry the day this time. Indeed, if there is any hope for the defendant to learn from his mistakes, he must be punished in a manner commensurate with his behavior.

---

[3] The facts outlined in the Presentence Investigation Report surrounding the defendant's previous conduct contain many similarities to the instant offense. The officer noted that the defendant's eyes were watery and bloodshot. He locked himself inside of his vehicle and could not get out. The defendant also performed field sobriety tests and failed. He refused a breath test and ultimately had a blood alcohol content of .10%. *See* ECF No. 33 at 15, ¶ 75.

For these reasons, the United States respectfully requests that the Court revoke the defendant's probation and sentence him to 12 months of incarceration followed by two years of supervised release.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____/s/_____
Jamar K. Walker
Heidi B. Gesch
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office: (703) 236-3852
Fax: (703) 299-3980
Email: jamar.k.walker@usdoj.gov
Email: heidi.gesch2@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on November 17, 2021, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record. I also certify that on November 17, 2021, I will send a copy of the foregoing via email to Jeffrey Smihal, United States Probation Officer.

By: _____/s/_____
Jamar K. Walker
Assistant United States Attorney